## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 29 2017, 10:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean P. Hilgendorf
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard Davis,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 29, 2017

Court of Appeals Case No.
71A05-1607-CR-1607

Appeal from the St. Joseph Superior Court.
The Honorable Jane Woodward Miller, Judge.
Trial Court Cause No. 71D01-1512-F5-284

**Barteau, Senior Judge**

# Statement of the Case

Richard Davis appeals from his conviction of Level 5 felony burglary,[1] contending that there is insufficient evidence to support his conviction. We affirm.

# Issue

The sole issue presented in this appeal is whether there is sufficient evidence of intent to support Davis' conviction of Level 5 felony burglary.

# Facts and Procedural History

On December 17, 2015, Danny Warner was alone at his home on 2526 Bonds Avenue in South Bend, Indiana, recuperating from a recent knee surgery. His girlfriend and her son, who both lived with him at that address, had left to do some shopping.

Warner had installed a motion activated security system in his detached garage because someone had broken into his garage during the summer. When activated, the security system only makes a beeping sound in the house, much like a smoke detector does.

On that day, Warner was in bed icing and elevating his knee when he heard the alarm system signal that something or someone was in his garage. He initially

---

[1] Ind. Code § 35-43-2-1 (2013).

thought it was a false alarm because previously he had issues with animals entering his garage through a broken window, setting off the alarm. Nonetheless, he went outside to investigate, not bothering to put on his knee brace or take his cell phone with him.

[6] Once outside, Warner noticed that the door to his garage was ajar. The door should have been closed and locked. Warner, who had paused before investigating further, was startled when Davis rushed out of the garage and ran directly into him, knocking both of them to the ground. A struggle ensued.

[7] Warner grabbed Davis and dragged him into his house. Davis escaped Warner's grasp once inside, but Warner grabbed him and they struggled again. Warner kicked Davis' legs out from underneath him and sat on him while calling 911 on his cell phone. Repeatedly, during the scuffle from the backyard to the house, Davis implored Warner to let him go, asked him if he had a god, and stated that he could not go back to jail.

[8] While Warner was sitting on Davis, waiting for the police to arrive, Davis pulled out a screwdriver and tried to bring it up to the side of Warner's body, attempting to stab him. Warner was able to grab Davis' wrist and beat his hand on the floor until Davis was disarmed. The two remained there, with Warner sitting on Davis' chest, until police officers arrived.

[9] South Bend Police Department Officer Justin Gorny was dispatched to Warner's house. Because the front door of Warner's house was locked, Warner had to get up and take Davis with him to meet the officer. Warner described to

Officer Gorny what had occurred and that Davis had entered Warner's garage without his permission.

[10] Warner went with the responding officers to his garage. They observed that the door casing and the lock had marks indicative of having been pried open. Those marks were not there prior to that incident. Inside the garage, they observed that a toolbox, a corded drill, and a refrigeration weight had been moved to a work bench closer to the garage door.

[11] The State charged Davis with burglary as a Level 5 felony. After a jury trial, at which Davis proceeded pro se, the jury found him guilty as charged. The trial court sentenced Davis to a term of six years executed. Davis now appeals.

## Discussion and Decision

[12] Davis contends that there is insufficient evidence that he broke and entered Warner's garage and intended to commit a felony therein.

[13] To establish beyond a reasonable doubt that Davis committed burglary, the State was required to prove that Davis broke and entered Davis' garage with the intent to commit theft in it. *See* Ind. Code § 35-43-2-1.

[14] When reviewing the sufficiency of the evidence, we consider only the evidence and reasonable inferences most favorable to the conviction, neither reweighing evidence nor reassessing witness credibility. *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). We will affirm the judgment unless no reasonable factfinder could find the defendant guilty. *Id.*

[15] "Burglars rarely announce their intentions at the moment of entry." *Gilliam v. State*, 508 N.E.2d 1270, 1271 (Ind. 1987). "Intent to commit a given felony may be inferred from the circumstances, but some fact in evidence must point to an intent to commit a specific felony." *Justice v. State*, 530 N.E.2d 295, 297 (Ind. 1988). Furthermore, intent to commit a felony may not be inferred from proof of breaking and entering alone. *Id.* "The evidentiary *inference* pointing to the defendant's intent must be separate from the *inference* of the defendant's breaking and entering." *Baker v. State*, 968 N.E.2d 227, 230 (Ind. 2012).

[16] The evidence in this appeal shows that Warner was headed to investigate what might have triggered the security system in his garage when he observed that the garage door, which should have been closed and locked, was ajar. Warner froze for a moment upon seeing this. Davis then ran from the garage and collided with him, forcing both of them to the ground where a struggle ensued.

[17] Warner grabbed Davis and brought him into his house where he could retrieve his cell phone to call 911. The two scuffled again, but Warner prevailed, sitting on Davis' chest while placing the call. Davis pulled out a screwdriver and attempted to strike Warner in the side with it. Warner, however, was able to disarm Davis until the police arrived. During the scuffle, Davis pleaded with Warner to let him go, asked if he had a god, and stated he did not want to return to jail.

[18] After the police arrived, Warner walked to the garage with the responding officers. They observed marks on the garage door casing and lock area that

were not there before the incident. They also observed that a toolbox, a corded drill, and a refrigeration weight had been moved to a work bench closer to the garage door. Warner told the officers that despite the disarray in his garage, he knew that these items had been moved. The refrigeration weight was unique and of particular value such that it would never have been left in such a precarious position. This circumstantial evidence is sufficient to establish Davis' intent to steal those items.

To the extent Davis points to inconsistencies between the information Warner provided to police officers during the 911 call and initial statements, and his testimony at trial, that argument is an invitation to reweigh the evidence. Our standard of review does not allow us to engage in such an evaluation. *Griffith*, 59 N.E.3d at 958. The evidence is sufficient to support Davis' conviction.

# Conclusion

In light of the foregoing, we affirm the trial court's decision.

Affirmed.

Riley, J., and Kirsch, J., concur.